**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                              **1:05-cr-0097-WSD-JFK**

**OLIVER WENDELL EDWARDS,**

**Defendant.**

## ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation [84] ("R&R") regarding Defendant Oliver Wendell Edwards ("Edwards") Motion to Suppress Evidence [67] and Motion to Suppress Statements [68], and Defendant's Objections to Magistrate's Report [86].

## I.    BACKGROUND

In the afternoon of January 13, 2006, Edwards was sitting in a parked car in apartments located at 1247 Simpson Road, an area known for high levels of criminal drug activity.  Atlanta police officers in the Red Dog Unit,[1] including Officer Andrew Griffin ("Officer Griffin"), were patrolling in the Simpson Road area.  During the patrol, the officers pulled into the apartment parking lot and

---

[1]  The Red Dog Unit is a tactical unit that interdicts street level drug dealers.

conducted a foot patrol.  The officers saw Edwards's occupied vehicle, and they allege that as they began to approach it, Edwards appear to attempted to conceal something between the seats.  When the officers reached the vehicle, they saw a sandwich-type bag containing a green leafy substance partially concealed by a white fast food bag between the front seats.  Suspecting that the leafy substance was marijuana, the officers arrested Edwards and the vehicle's other occupant.

As the officers removed Edwards and the passenger from the car, Edwards removed his jacket and placed it in the front seat. Officer Griffin testified that he found this behavior suspicious because it was January and raining.  Before the officers could read Edwards his <u>Miranda</u> rights, and before they asked him any questions, Edwards stated that the marijuana was his, that the marijuana was all the drugs he had, and that the car's passenger had nothing to do with any of it.

The officers then searched Edwards, the passenger, and the car's passenger compartment.  The officers searched the jacket Edwards had left in the front seat, where they discovered 5.5 grams of cocaine, cash, and a handgun.

On March 1, 2005, Edwards, who has a previous felony conviction, was indicted for possession of the handgun.  Edwards filed the present motions in an effort to suppress evidence that the police officers found drugs and a gun in his

2

jacket, and also to suppress the statement he made as he was being arrested.

The Magistrate Judge held a suppression hearing on May 23, 2007.  The R&R based on that hearing held: (1) that Officer Griffin's testimony was credible; (2) that the officers did not violate Edwards's Fourth Amendment rights during the "consensual encounter" during which they looked into the windows of his car and saw marijuana; (3) that having looked into the car windows and seen marijuana, the officers had probable cause to arrest Edwards; (4) that the search of the car and Edwards's jacket was proper a proper search incident to his arrest; and (5) Edwards's statement is not protected by the Fifth or Sixth Amendments because it was spontaneous and voluntary.

Edwards objected to the following findings: (1) that Officer Griffin's testimony was credible; and (2) that the officers' presence outside the car was not a seizure.  Edwards argues essentially that officers violated his Fourth Amendment rights by walking to his car and looking through the windows, and thus any evidence obtained because of that violation should be suppressed as fruit of the poisonous tree.  Edwards does not object to the R&R's findings that (assuming the officers could constitutionally look into Edwards's car windows) his arrest and the search of his jacket were constitutional.  Edwards also does not object to the

3

finding that his statement was spontaneous and voluntary.

## II.     STANDARD OF REVIEW

A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(c).  With respect to those findings and recommendations to which Petitioner has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).  Petitioner has not objected to the fact findings of the R&R, so the Court adopts those facts.  Id.

## III.    DISCUSSION

The Court, having carefully reviewed the R&R, finds no plain error in its findings of fact or in its unobjected to conclusions.  The Court considers the matters objected to below.

### A.     Officer Griffin's Credibility

Edwards first objects that the magistrate judge erred by finding Officer Griffin's testimony at the suppression hearing credible.  Edwards argues that Officer Griffin's testimony was not credible because he was later transferred to the C.I.D. Narcotics Unit, which was later involved in serious police misconduct

4

involving planted evidence and unwarranted violence that resulted in the death of an elderly Atlanta woman in her own home (the "Neal Street incident").  The Court notes that Officer Griffin had no direct involvement in the Neal Street incident.

"It would be a rare case in which a district court could resolve credibility choices contrary to the recommendations of the magistrate without himself having had an opportunity to see and hear the witness testify."  Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180, 1196 (11th Cir. 2006).  A district court may reject a magistrate's credibility findings without holding its own hearing "only when there is an articulable basis for rejecting the magistrate's original resolution . . . ."  Id. at 1202 (citations omitted).  A district court need not rehear testimony, however, to adopt a magistrate judge's credibility determination.  United States v. Thompson, 422 F.3d 1285, 1297 (11th Cir. 2005).

The Court finds no articulable basis to reject the magistrate court's credibility finding with respect to Officer Griffin.  Edwards's entire attack on Officer Griffin's testimony rests on the fact that after the events of January 13, 2005, Officer Griffin was reassigned to Team Two of the C.I.D. Narcotics Unit, which was tangentially involved in the "Neal Street" incident.  Edwards asks the Court to infer that because Officer Griffin later joined a police unit that was

5

reported to have problems with corruption, he must have been corrupt, that because he was corrupt at the time of the Neal Street incident he must have been corrupt in January of 2005 and continued to be corrupt through the time of his testimony, and, because he was corrupt both in January of 2005 and at the time fo his testimony, the magistrate judge should not have found his testimony credible.

Edwards's series of inferences is not reasonable or factually based.  Officer Griffin was not a member of the C.I.D. Narcotics Unit in January of 2005.  He was a member of the Red Dog street-level interdiction unit.  Even if members of the C.I.D. Narcotics Unit were corrupt at that time, Officer Griffin was not yet associated with that unit.  Further, Officer Griffin was questioned by federal and state officers about the Neal Street incident, and there is no evidence that he was ever the subject of an accusation of wrongdoing.  Officer Griffin's record contains no disciplinary or other to discredit his character for truthfulness.  Edwards has not made any showing that Officer Griffin's testimony is inherently untrustworthy. The magistrate judge appropriately concluded that Officer Griffin's testimony was trustworthy, and Edwards has not provided a sufficient basis for this Court to reject it.

B.    The Constitutionality of Looking Into Edwards's Car Windows

Edwards next argues that the officers improperly seized him by approaching, standing outside, and looking through the windows of his car.  A person is only "seized" for Fourth Amendment purposes when their freedom of movement is restrained, either by physical force or show of authority.  United States v. Mendenhall, 446 U.S. 544, 553 (1980).  Factors characteristic of seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. at 554. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002).  The key inquiry is whether, under the totality of the circumstances, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." United States v. Baker, 290 F.3d 1276, 1278 (11th Cir. 2002).  "That is, where a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter, the encounter with the

7

police is consensual, and the Fourth Amendment is not implicated."  United States

v. Ramirez, 476 F.3d 1231, 1238 (11th Cir. 2007).

The Eleventh Circuit addressed factual circumstances similar to this case in

Baker.  There, a plainclothes officer walked over to a car stuck in traffic, showed

his badge, and asked to speak to the men inside.  The circuit court held that the

contact was consensual and did not constitute a seizure:

> The officers did not display a weapon or use any
> language or tone that would indicate that compliance . . .
> was compelled.  Baker was free to decline to answer the
> officer's questions at any time but instead engaged in
> conversation.  The record does not indicate that the
> officers behaved in a manner that was threatening.
> Before the officers found the drugs they did not touch
> Baker.  Baker could have ended the encounter at any time
> prior to the drugs being found. Just because Baker was in
> a car that was momentarily stopped waiting for traffic to
> clear does not elevate this interaction to that of a seizure.

Id. at 1279.

In the present case, the officers, who were dressed in the Red Dog police

uniforms, walked up on each side of Edwards's car.  They said nothing to Edwards

or the passenger.  They did not display their weapons.  They did not block the front

or rear of the car, or otherwise prevent Edwards from leaving.  They merely stood

beside the vehicle and looked through the windows.

8

The officers did nothing to indicate to Edwards that he was not free to leave. Edwards could have started the car and left; instead he chose to stay and allow the officers to look through his windows.  The contact was thus "consensual," and did not rise to the level of a seizure.  <u>United States v. Espinosa-Guerra</u> 805 F.2d 1502, 1506-07 (11th Cir. 1986).[2]

Edwards argues that the Court should follow <u>United States v. Packer</u>, 15 F.3d 654 (7th Cir. 1994).  Edwards's characterization of the facts of that case demonstrates that it does not apply here.  In his Objections, Edwards describes the facts of <u>Packer</u> as follows: "In that case, officers acting on a tip <u>stopped a vehicle</u> and after seeing a weapon inside arrested the occupants.  The [c]ourt suppressed the evidence as there was not a reasonable and articulable suspicion to make the investigatory stop."  (Objections at 2) (emphasis added).  In <u>Packer</u>, the police <u>stopped</u> the car in question.  An investigatory stop is a seizure raising Fourth Amendment concerns and requires reasonable suspicion to be valid.  <u>Terry v. Ohio</u>,

---

[2]  Although Edwards does not raise the argument in his objections, the Court notes that the officers' actions also did not constitute an improper search.  It is axiomatic that the mere observation of an object left in plain view, such as the marijuana in this case, is not a "search" for Fourth Amendment purposes.  <u>Texas v. Brown</u>, 460 U.S. 730, 739 n.4 (1983). "A truly cursory inspection–one that involves merely looking at what is already exposed to view . . . is not a search for Fourth Amendment purposes." <u>Arizona v. Hicks</u>, 480 U.S. 321, 328 (1987).

392 U.S. 1 (1968); <u>Packer</u>, 15 F.3d at 657.  The officers in <u>Packer</u> "parked both in front and behind the Defendant's car with the 'take down' light shining through the Defendant's windows.  As Officer Wiesmueller approached the car with a flashlight, she asked the occupants to put their hands in the air . . . ." <u>Id.</u>  Edwards also cites <u>United States v. Beck</u>, 602 F.2d 726 (5th Cir. 1979) and <u>Delaware v. Prouse</u>, 440 U.S. 648 (1979).  In <u>Beck</u>, an officer pulled his patrol car so close to a suspects car that the suspect was effectively physically restrained. 602 F.2d at 729.  In <u>Prouse</u>, an officer stopped a moving car for the purpose of investigating the driver.  <u>Id.</u> at 651.

In the present case, the officers did not stop Edwards's car.  They did not park him in or otherwise restrict his ability to leave.  They did not shine a take down light in his eyes, and they did not demand that he put his hands in the air.  Neither the circumstance of an investigatory stop nor the indicia of custody that governed the decisions in <u>Packer</u>, <u>Beck</u>, and <u>Prouse</u> apply in this case.

The magistrate judge found that once the officers saw what appeared to be marijuana in plain view, they had probable cause to arrest Edwards and search his person and the car.  This conclusion is not objected to, and the Court finds that it is not plain error.

10

IV.    **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Court **ADOPTS AS ITS ORDER** the R&R [84].

**IT IS FURTHER ORDERED** that Defendant's Objections to Magistrate's Report [86] are **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [67] and Motion to Suppress Statements [68] are **DENIED.**

**SO ORDERED** this 28th day of August, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE